**In the Interest of K.C.M.**

**Juvenile Officer, Respondent,**

**v.**

**D.M. (Natural Mother) and R.M. (Natural Father), Appellants.**

**Nos. WD 60742, WD 60972.**

Missouri Court of Appeals, Western District.

Sept. 10, 2002.

Edward Berg, Columbia, for Natural Mother.

Loramel P. Shurtleff, Columbia, for Natural Father.

Kenneth D. Kyser, Moberly, for respondent.

Randy Flow, Fayette, Guardian ad litem.

Before ULRICH, P.J., and SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

D.M. (mother) and R.M. (father) appeal from the judgment of the Circuit Court of Howard County, Juvenile Division, terminating their parental rights to K.C.M.,[1] pursuant to § 211.447.[2]

The mother raises two points on appeal. In Point I, she claims that the juvenile court erred in terminating her parental rights to K.C.M. pursuant to: (1) § 211.447.2(1), for being in foster care at least fifteen of the most recent twenty-two months; (2) § 211.447.4(2), for abuse and neglect; and (3) § 211.447.4(3), for failure to rectify after being under the jurisdiction of the juvenile court for a period of one year, because the court failed to make the requisite findings to terminate under those subsections in that the court's findings in that regard were incomplete and were not supported by the record. In Point II, she claims that the trial court erred in terminating her parental rights to K.C.M. based upon its finding that termination was in the best interest of the child, as required by § 211.447.5, because the court's best interest findings under § 211.447.6 were incomplete and were not supported by the record. The father raises what he denominates as three points on appeal. In Point I, he "adopts in their entirety the points

---

1. Their appeals were consolidated by order of this court.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

relied upon as set forth in [the mother's] brief." He then proceeds in Points II and III to reiterate the same two points raised by the mother. Thus, regardless of the father's characterization, he raises only two points on appeal, which are identical to those raised by the mother.

We affirm the circuit court's judgment terminating the father's parental rights to K.C.M., but reverse the court's judgment terminating the parental rights of the mother and remand the case for further findings consistent with this opinion.

## Facts

On February 19, 1999, the Juvenile Officer of Howard County (the JO) filed a petition to have the juvenile court assume jurisdiction over K.C.M., then sixteen months old, pursuant to § 211.031. The petition alleged that, on February 8, 1999, officers of the Howard County Sheriff's Department found a methamphetamine lab in the home where the father, the mother, and K.C.M. were residing and that a bucket containing residue from methamphetamine production was found in K.C.M.'s room. The petition also alleged that the mother had admitted to a sheriff's deputy that she was aware of the methamphetamine production in the home and that she was found with a white powder in her possession which she admitted to be methamphetamine. The petition further alleged that, while incarcerated in the Howard County jail, the mother agreed to a safety plan which provided that, subject to supervised visitation by the mother, K.C.M. would remain in the home of family friends, Randy and Alena Stewart, pending an investigation by the Division of Family Services (DFS), but that the mother failed to follow the supervised visitation provisions of the plan by taking K.C.M. with her to visit the father in the Howard County jail. The juvenile court sustained

the JO's petition, placing K.C.M. in the temporary legal custody of the DFS. K.C.M. was placed in a foster home on April 13, 1999.

As a result of the February 8, 1999, incident, the father was charged and pled guilty in the Circuit Court of Howard County to one count of manufacturing a controlled substance, § 195.211, and was sentenced to eight years in prison. Pursuant to § 217.362, the execution of his sentence was suspended and he was placed in a long-term institutional substance abuse treatment program from the fall of 2000 until January 2, 2001. The mother was not charged in connection with the February 8, 1999, incident, but she was charged and pled guilty to possession of a controlled substance, § 195.202, when she was caught attempting to smuggle methamphetamine to the father while he was incarcerated in the Howard County jail awaiting trial. The mother was incarcerated for seventy days for the possession conviction. Subsequently, in July of 2000, while law enforcement officers were at a Boonville, Missouri, home arresting the occupant for operating a methamphetamine laboratory there, the mother approached the house but drove away upon seeing the officers. She was subsequently stopped and drug paraphernalia was discovered in her vehicle.

On February 20, 2001, less than two months after the father was released on probation from the long-term institutional substance abuse treatment program, he was arrested when police discovered a methamphetamine laboratory inside the residence where the mother and the father were residing and where K.C.M. had recently stayed for an unsupervised visitation. As a result of the February 20, 2001, incident, the father was re-incarcerated for violating his probation from the eight-year

sentence imposed for the conviction of manufacturing a controlled substance.

On March 1, 2001, the JO filed a petition to terminate the mother's and the father's parental rights to K.C.M. on the ground that K.C.M. had been in foster care for at least fifteen of the most recent twenty-two months, pursuant to § 211.447.2(1); on the ground of neglect, pursuant to § 211.447.4(2); and on the ground of failure to rectify, pursuant to § 211.447.4(3). The case was heard on June 20, 2001, and on October 16, 2001, the juvenile court entered its judgment terminating the mother's and the father's parental rights to K.C.M., concluding that the evidence supported terminating the mother's and the father's parental rights on all three grounds set forth in the JO's petition.

With respect to § 211.447.2(1), the foster care provision, the juvenile court found that "K.C.[M.] has been in foster care for at least fifteen out of the most recent twenty-two months." The juvenile court made the following findings in support of terminating the mother's and the father's parental rights pursuant to § 211.447.4(2), for neglect:

i. There is no evidence that either the natural father or the natural mother suffers from a mental condition that renders the parent unable to knowingly provide the said child necessary care, custody, or control.

ii. There is no evidence that either the natural father or the natural mother suffers from a chemical dependency which prevents the parent from consistently providing the said child with necessary care, custody, or control.

iii. There is no evidence that either the natural father or the natural mother has committed severe acts or recurrent acts of physical, emotional, or sexual abuse toward the child.

iv. The natural father and the natural mother have repeatedly and continuously failed, although physically and financially able, to provide the said child with adequate food, clothing, shelter, and education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

The juvenile court made the following findings in support of terminating the mother's and the father's parental rights pursuant to § 211.447.4(3), for failure to rectify:

i. The natural father and the natural mother entered into a written social service plan with the Missouri Division of Family Services, requiring the parents to maintain a safe home environment plan, and the parents failed to comply with that provision, in that:

(a) The Court finds that on February 8, 1999, the child was taken from the parental home and placed with friends of the parents, when the child's parents were arrested for manufacturing methamphetamine in the parental home. The Court finds that the child was thereafter and [sic] placed in the temporary legal custody of the Missouri Division of Family Services on or about February 18, 1999.

(b) The Court finds that [D.M.], the natural mother, was granted supervised visitation with the child and on or about February 13, 1999, violated the terms of her visitation by taking the child with her to visit [R.M.] at the Howard County jail.

(c) The Court finds that on or about July 22, 1999, [D.M.], the natural mother, was arrested for possession of a controlled substance, for attempting to smuggle methamphetamine to [R.M.], who was incarcerated in the Howard County jail.

(d) The Court finds that on or about November 10, 1999, the natural mother and the natural father were legally married.

(e) The Court finds that [D.M.], the natural mother, entered a plea of guilty to the charge of possession of a controlled substance, was sentenced to a six-year prison term on December 8, 1999, and served approximately 70 days in a Missouri Department of Corrections institutional treatment center for said offense, being released on or about February 18, 2000, and placed on probation.

(f) The Court finds that in July, 2000, [D.M.], the natural mother, was at the residence of one Nick Taylor, at a time when that person was being arrested for the charge of operating a meth lab, that she drove away from that residence, was stopped by law enforcement officers, and drug paraphernalia was discovered in her car at that time.

(g) The Court finds that [R.M.], the natural father, was charged with and pled guilty to manufacturing methamphetamine, sentenced to an eight-year term, and incarcerated in the Missouri Department of Corrections, as a result of the February 8, 1999 arrest. The Court finds that the natural father was released from the Department of Corrections on or about January 2, 2001, after completing long-term substance abuse treatment, and thereafter, on February 20, 2001, was arrested for manufacturing methamphetamine in Cooper County, Missouri, in the home where he was residing with [D.M.].

(h) The Court finds that the parents, [R.M. and D.M.], had exercised unsupervised visitation with the child on February 17, 2001, in that Cooper County residence where the alleged methamphetamine lab was located on February 20, 2001.

(i) The Court finds that [R.M.] is again incarcerated, and now faces federal charges arising from the February 20, 2001 arrest.

(j) The Court finds the testimony of the natural parents that [D.M.] was unaware of either meth lab to be not credible, and while the natural mother has made progress in dealing with her own substance abuse, the Court finds that her acquiescence to the manufacturing of methamphetamine in her home while the child was present in the home to be totally irresponsible, and a significant danger to the health and life of the child.

(k) The Court finds that the natural mother has not maintained stable employment.

(l) The Court finds that the natural parents have failed to take advantage of other services offered by the Division, including but not limited to parenting classes.

ii. The efforts by the Juvenile Officer and the Missouri Division of Family Services to aid the parents on a continuing basis in adjusting their circumstances or conduct were unsuccessful.

iii. There is no evidence that either the natural father or the natural mother suffers from a mental condition that renders the parent unable to knowingly provide the child the necessary care, custody, or control.

iv. There is no evidence that either the natural father or the natural mother suffers from a chemical dependency which prevents the parent from consistently providing the child the necessary care, custody, and control.

In addition, the juvenile court made the following findings pursuant to § 211.447.6:

That [K.C.M.] has no substantial emotional ties to the natural father, and that the child's emotional ties with the natural mother, are not strong.

That the natural father, and the natural mother, although able to do so, have not made any meaningful contribution or payment for the cost of care and maintenance of the child.

That it is not likely that additional services would bring about a lasting parental adjustment enabling the return of [K.C.M.] to the natural father or the natural mother within an ascertainable period of time.

That the natural father and the natural mother have not demonstrated a commitment to the child.

The mother filed her notice of appeal on November 29, 2001. On January 31, 2002, the father filed an "Application for Leave to File Notice of Appeal Out of Time," which was sustained on February 4, 2002. The two appeals were consolidated on February 13, 2002. The JO failed to timely file a respondent's brief, and, pursuant to Western District Special Rule 30, was granted a maximum of one extension of the filing deadline. The JO then failed to file her brief before the expiration of the one extension allowed, and when she moved for a second extension, her motion was denied.

### Standard of Review

■ The juvenile court's decision terminating parental rights will be affirmed, unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re A.S.O.*, 52 S.W.3d 59, 63 (Mo.App.2001). The evidence in the record is to be viewed in the light most favorable to the judgment. *Id.* at 63–64.

■ Before it may terminate parental rights, the juvenile court must find by clear, cogent, and convincing evidence that a statutory ground for termination exists. *In Interest of C.M.M.*, 757 S.W.2d 601, 604 (Mo.App.1988). Whether statutory grounds have been proven by clear, cogent and convincing evidence is reviewed pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976), under which we are to affirm the juvenile court's decision unless the record contains no substantial evidence to support the decision, the judgment is against the weight of the evidence or the juvenile court erroneously declared or applied the law. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. *banc* 1984). However, review of whether it is in the best interests of the child to terminate parental rights is pursuant to an abuse of discretion standard. *In re A.S.*, 38 S.W.3d 478, 486 (Mo.App.2001).

### The Mother's Appeal

### I.

■ In Point I, the mother claims that the juvenile court erred in terminating her parental rights to K.C.M. pursuant to: (1) § 211.447.2(1), for being in foster care at least fifteen of the most recent twenty-two months; (2) § 211.447.4(2), for abuse and neglect; and (3) § 211.447.4(3), for failure to rectify after being under the jurisdiction of the juvenile court for a period of one year, because the court failed to make the requisite statutory findings to terminate under those subsections in that the court's findings were incomplete and were not supported by the record. Although her first point addresses all three statutory grounds found by the juvenile court for termination, because we are to affirm a termination of parental rights if any statutory ground found for termination is proven, *In re N.M.J.*, 24 S.W.3d 771, 777 (Mo.App.2000), and because we find that the mother's attack in this point on the court's

termination under § 211.447.2(1) is without merit, we address only that ground of termination in this point.

■ Subsection 211.447.5 provides:
The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.

Thus, to terminate parental rights under § 211.447, the juvenile court must first find at least one of the statutory grounds set forth in that section. § 211.447.5; *In re J.L.M.*, 64 S.W.3d 923, 925 (Mo.App.2002). If the court finds that a statutory ground for termination has been proven, to terminate on the ground proven, the court must then find, pursuant to § 211.447.5, that the best interests of the child would be served by termination. *In re C.W.*, 64 S.W.3d 321, 326 (Mo.App.2001). Thus, in this two-step procedure for terminating parental rights, the court never reaches the issue of best interest, under § 211.447.5, unless and until a statutory ground for termination is proven. *In re T.A.S.*, 32 S.W.3d 804, 815 (Mo.App.2000).

In Point I, the mother attacks the first step of the two-step procedure for terminating parental rights under § 211.447, and attacks the second step in Point II. However, in both points, in her attack on termination pursuant to § 211.447.2(1), she is claiming that the juvenile court was required to make the findings mandated by § 211.447.6 and that its findings in that regard were deficient. In other words, she is contending, in part, that the juvenile court, in terminating parental rights under § 211.447.2(1), is not only required to make § 211.447.6 findings with respect to its determination of whether a statutory ground exists for termination but also with respect to its best interests determination under § 211.447.5. This obviously raises the question as to whether § 211.447.6 findings are required in determining if a statutory ground exists for termination or if termination is in a child's best interests pursuant to § 211.447.5. The answer is significant in that proof of a statutory ground for termination requires "clear, cogent and convincing evidence," whereas a best interests determination only requires proof by a preponderance of the evidence. § 211.447.5; *In re C.W.*, 64 S.W.3d at 326. Thus, in resolving the mother's claims in Points I and II with respect to termination under § 211.447.2(1), we necessarily must first address the issue of at which step in the termination procedure is the court required to make the § 211.447.6 findings.

A review of the cases discloses numerous appellate decisions that have referred to the statutory factors in § 211.447.6 as being "best interests" factors. *See In re A.S.O.*, 52 S.W.3d at 64; *In re C.N.W.*, 26 S.W.3d 386, 395 (Mo.App.2000). However, § 211.447.6 does not expressly mention "best interests," and we can find no cases that have actually interpreted § 211.447 to decide the issue. Thus, we are called upon to interpret that section, as essentially a case of first impression, in disposing of the mother's claims.

■ In interpreting statutes, we are to ascertain the intent of the legislature. *Habjan v. Earnest*, 2 S.W.3d 875, 881 (Mo. App.1999). In doing so, we are to give the language used its plain and ordinary meaning. *Id.* Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent which is contrary thereto. *Id.* "When the legislative intent

cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied." *Id.*

Section 211.447.6 reads:

When considering whether to terminate the parent-child relationship pursuant to subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

In giving this language its plain and ordinary meaning, we would first note that although § 211.447.6 expressly refers to "subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section," subsection 3 does not set out a separate ground for termination. It reads:

If grounds exist for termination of parental rights pursuant to subsection 2 of this section, the juvenile officer or the division may, but is not required to, file a petition to terminate the parental rights of the child's parent or parents if:

(1) The child is being cared for by a relative; or

(2) There exists a compelling reason for determining that filing such a petition would not be in the best interest of the child, as documented in the permanency plan which shall be made available for court review; or

(3) The family of the child has not been provided such services as provided for in section 211.183.

Giving the language of subsection 3 its plain and ordinary meaning, it merely qualifies the filing of a petition for termination pursuant to subsection 2 and does not provide a separate ground for termination of parental rights. Thus, the only grounds that § 211.447.6 is actually referring to are those grounds set forth in subsections 2 and 4.

Section 211.447.6 provides that the juvenile court, "[w]hen considering whether to terminate the parent-child relationship pursuant to subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section," is to evaluate and make findings on the seven factors listed therein. It could be argued that this express reference to subsection 2 and the four enumerated subdivisions of subsection 4 evinces a legislative intent that the § 211.447.6 findings are to be made in

conjunction with the juvenile court's determination of whether a statutory ground exists for terminating parental rights, especially in light of the fact that § 211.447.6 never mentions "best interests." However, even a casual reading of the § 211.447.6 factors reveals that they are not relevant in determining the existence of a statutory ground for termination, but are only relevant in determining whether termination is in the best interests of the child. Thus, the express language of the factors would appear to be in conflict with an interpretation that the specific references of § 211.447.6 to the statutory grounds in subsections 2 and 4 means that the § 211.447.6 factors are to be considered by the juvenile court in determining whether a statutory ground exists for termination, rather than in determining the best interests of the child.

▮▮▮ Where two statutory provisions concerning the same subject matter are unambiguous when read individually, but conflict when read together, we first must attempt to harmonize them and give effect to both. *Andresen v. Bd. of Regents of Mo. W. State Coll.*, 58 S.W.3d 581, 587 (Mo.App.2001). Applying that standard, we find that the apparent conflicting language of § 211.447.6 can be harmonized by reading the reference to subsection 2 and subdivisions (1), (2), (3) and (4) of subsection 4 in the first sentence of § 211.447.6 as simply meaning that after a statutory ground is found, under one or both of those subsections in step 1 of the termination procedure, then in determining in step 2 of the procedure whether to terminate on the ground found as being in the child's best interests, the court is to consider and make findings on the appropriate and applicable factors of § 211.447.6. Of course, it would have been preferable for the legislature to have simply stated in § 211.447.6 that in determining whether to

terminate under a statutory ground or grounds found under subsection 2 or 4 as being in the best interests of the child, the court was to consider the factors enumerated in § 211.447.6, the fact that it did not does not persuade us that the factors were meant to be considered in any context other than in the context of determining the child's best interests.

We realize that to interpret § 211.447.6 as we do, another conflict arises in the language of § 211.447 as to the issue presented. That conflict revolves around the express reference in § 211.447.5 to "subsection 2, 3, or 4 of this section." This reference indicates that in every case of termination the juvenile court must find both the existence of a statutory ground under subsection 2 or 4, and that the termination of the parent or parents' rights under the ground or grounds found would be in the best interests of the child. Subsection 4 of § 211.447 sets out in subdivisions (1)-(6) six grounds for termination. Subdivision (5) of § 211.447.4 reads:

The child was conceived and born as a result of an act of forcible rape. When the biological father has pled guilty to, or is convicted of, the forcible rape of the birth mother, such a plea or conviction shall be conclusive evidence supporting the termination of the biological father's parental rights.

Subdivision (6) of § 211.447.4 reads:

The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to

care appropriately for the ongoing physical, mental or emotional needs of the child. It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated pursuant to subsection 2 or 3 of this section or subdivisions (1), (2), (3) or (4) of subsection 4 of this section or similar laws of other states.

While § 211.447.5 refers to grounds of termination under "subsection 2, 3, or 4 of this section," which would include the grounds set forth in subdivisions (5) and (6) of subsection 4, § 211.447.6, in requiring consideration of the six factors set forth therein, only refers to "subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section," which would exclude consideration of the § 211.447.6 factors with respect to termination under subdivisions (5) and (6) of § 211.447.4. This discrepancy in the language of subsections 5 and 6 would at first blush seem to cut against our interpretation of § 211.447.6, that the factors of that subsection are to be considered in determining the best interests of the child, but not in determining whether a statutory ground for termination exists, the argument being that if the legislature intended for the subsection 6 factors to be best interests factors as we have determined, why would it limit their application to only the first four grounds of termination listed in subsection 4, but still require in § 211.447.5 that a best interests finding be made as to all six subdivisions of subsection 4? We think that question can be answered in a logical and reasonable fashion while still holding to our interpretation of § 211.447.6.

In reviewing the factors of subsection 6, one is immediately struck by the fact that they would have little relevance in determining the issue of best interests of the child in terminating on one or both of the statutory grounds set out in subdivisions (5) and (6) of subsection 4. As a consequence, it would make sense for the legislature to exclude the application of the subsection 6 factors in determining whether a child's best interests would be served in terminating a parent or parents' rights under § 211.447.4(5) and (6). And, in fact, the legislative history of § 211.447 would indicate that the legislature reached that same conclusion. In the version of § 211.447 that was in effect prior to its amendment in 1998, the subsection 6 factors, then found in subsection 3, were to be applied not only to the first four grounds of what was then subsection 2, but also the fifth, or rape ground. The 1998 amendment removed the fifth ground from the application of what are now the subsection 6 factors. This amendment is a clear indication that the legislature no longer was requiring that the juvenile court consider what we have dubbed the best interests factors in determining whether to terminate under the grounds now found in subdivisions (5) and (6) of § 211.447.4.

Our interpretation of § 211.447.6 and its relation to §§ 211.447.4 and .5 does raise the question of what factors should the juvenile court consider in determining whether a child's best interests would be served by terminating parental rights under § 211.447.4(5) or (6). The answer appears to be that the legislature intended that this determination simply be left to the sound discretion of the juvenile court without requiring it to consider any certain factors. Of course, we are aware of the fact that one interpretation of § 211.447.6 might be somewhere in between our interpretation and an inter-

pretation that the subsection 6 factors are statutory grounds factors, rather than best interests factors. The middle ground interpretation of § 211.447.6 would be that by excluding the grounds of § 211.447.4(5) and (6) from the best interests factors of subsection 6, the legislature was expressing an intent that a best interests determination under § 211.447.5 was not required to terminate under those grounds. This would be logical given the grievous nature of the parent or parents' acts hypothesized in § 211.447.4(5) and (6). However, as much sense as that would make to us, we are constrained by the way the legislature chose to draft § 211.447.5. That subsection leaves little doubt that in terminating on any statutory ground, the juvenile court is required to determine whether termination would be in the best interests of the child. If the legislature's intent is clear and unambiguous to a person of ordinary intelligence from the language of the statute itself, then we must interpret and apply it as written and there is no room for construction. *Vocational Servs., Inc. v. Dev. Disabilities Res. Bd.*, 5 S.W.3d 625, 630 (Mo.App.1999). It is not our prerogative to question the wisdom of the legislature in enacting a statute. *Batek v. Curators of Univ. of Mo.*, 920 S.W.2d 895, 899 (Mo. banc 1996).

Given our interpretation of § 211.447.6, the mother's attack in Point I on the sufficiency of the juvenile court's subsection 6 findings in the context of the court's finding of the existence of the statutory ground for termination under § 211.447.2(1) is without merit. That is not the end of our inquiry as to this point, however. In Point I, as to termination under § 211.447.2(1), the mother also claims that the evidence did not support a finding of that ground for termination. We disagree.

Section 211.447.2(1) reads:

2. Except as provided for in subsection 3 of this section, a petition to terminate the parental rights of the child's parent or parents shall be filed by the juvenile officer or the division, or if such a petition has been filed by another party, the juvenile officer or the division shall seek to be joined as a party to the petition, when:

(1) Information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months.

It is undisputed that K.C.M. had been in foster care for at least fifteen of the most recent twenty-two months preceding the filing of the petition to terminate the mother's parental rights. This was sufficient to support the juvenile court's finding that the mother's parental rights were subject to termination under § 211.447.2(1). *In re C.N.W.*, 26 S.W.3d at 394.

Point denied.

## II.

Although we found in Point I that the juvenile court did not err in determining that the mother was subject to having her parental rights to K.C.M. terminated under § 211.447.2(1), that does not end our inquiry as to the mother's appeal. As discussed, *supra*, to terminate the mother's rights, the court not only had to find at least one statutory ground for termination, but also had to find that it was in the child's best interests to terminate. In that regard, the mother claims that the trial court erred in terminating her parental rights to K.C.M. based upon its finding that termination was in the best interests of the child, as required by § 211.447.5, because the court's findings under § 211.447.6 were incomplete and were not supported by the record. Specifically, she claims that in making its requisite

§ 211.447.6 best interests findings, the court failed to make any finding as to factor (2), and that its findings as to factors (1), (3), (4), and (5) lacked the required specificity and evidentiary support.

■ As the mother asserts, the record reflects the fact that the juvenile court did not make a finding on factor (2) of § 211.447.6 in making its best interests determination. However, the mere fact that the juvenile court did not make a finding on factor (2) of § 211.447.6 does not mean that it erred as the mother claims in this point. Section 211.447.6 does not mandate a specific finding as to each of the seven factors listed. *In re N.M.J.*, 24 S.W.3d at 783. Rather, it only requires findings as to those factors that are "appropriate and applicable to the case." *Id.* Thus, to succeed on her claim in this point, that the juvenile court erred in failing to make a finding on factor (2), the mother has the burden of showing that factor (2) was appropriate and applicable to her termination proceeding. And, in order to show resulting prejudice, as she must to succeed on her claim, she must also show that the factor would arguably favor her in retaining her parental rights to K.C.M. *Id.*

■ In *In re N.M.J.*, this court held that, if a factor enumerated in § 211.447.6 is appropriate and applicable, in that there was evidence presented on it at trial that would arguably favor the parent, and the trial court fails to make a finding on that factor, then we are required to reverse and remand for the court to make the requisite finding on that factor and then determine whether to terminate in light thereof. 24 S.W.3d at 783. The rationale for reversing and remanding for further findings in that situation is derived from the fact that in terminating a parent's parental rights pursuant to § 211.447 the court is exercising an awesome power, and, as such, strict

compliance with the statute authorizing the use of that power is required. *In re C.M.D.*, 18 S.W.3d 556, 561 (Mo.App.2000). In that regard, § 211.447.6 requires a specific finding on any appropriate and applicable factor enumerated in the subsection. Consequently, where the record indicates that a factor is appropriate and applicable in determining whether it is in the child's best interests to terminate based on evidence to that effect, it is incumbent on the juvenile court to consider it and make a finding on it, as mandated by § 211.447.6. In the absence of this strict adherence by the juvenile court to the requirements of § 211.447.6, we have no choice but to reverse and remand for it to comply with the statute.

■ As to the appropriateness and applicability of factor (2) in determining the best interest of K.C.M. in terminating the mother's parental rights, the record shows that there was evidence presented that the mother visited K.C.M. a total of 60 times during the period of April 15, 1999, to February 23, 2001. Taking into account a six-month period in 1999 when the mother could not visit K.C.M. because she was incarcerated, the 60 visits during this period averages out to approximately one visit per week. This evidence convinces us that § 211.447.6(2) was an appropriate and applicable factor in the termination of parental rights case of the mother such that the juvenile court should have made a finding on the extent of the mother's visitation, whatever its conclusion. This it did not do. As such, we reverse and remand for the juvenile court to make a finding with respect to factor (2).

■ In Point II, the mother also attacks the juvenile court's best interests findings with respect to factors (1), (3), (4), and (5), claiming that they are merely "conclusory" and are not supported by the

record. The mother does not cite any authority that addresses the issue of the requisite specificity for § 211.447.6 factors. However, our review indicates the court held that in *In re A.S.O.*, 52 S.W.3d at 66, the court's findings must be sufficiently specific that a reviewing court can be assured that the juvenile court properly considered the statutory factors of § 211.447.6 in deciding whether to terminate parental rights.

■■■ As to factors (1), (3), (4) and (5), the court found:

That [K.C.M.] has no substantial emotional ties to the natural father, and that the child's emotional ties with the natural mother, are not strong.

That the natural father, and the natural mother, although able to do so, have not made any meaningful contribution or payment for the cost of care and maintenance of the child.

That it is not likely that additional services would bring about a lasting parental adjustment enabling the return of [K.C.M.] to the natural father or the natural mother within an ascertainable period of time.

That the natural father and the natural mother have not demonstrated a commitment to the child.

As to the juvenile court's finding with respect to factor § 211.447.6(1), that K.C.M.'s emotional ties to her "are not strong," the mother contends that this finding was conclusory. However, this court has found a similar finding to be minimally sufficient in *In re A.S.O.*, 52 S.W.3d at 67–68. The mother also argues that this finding was contrary to the evidence in the record, citing the testimony of DFS caseworker Mandy Young, who "indicated that there was a strong emotional tie between K.C.[M.] and the mother." In that regard, on direct examination, Young testified:

Q. Do you have information which suggests whether or not the child has emotional ties to the mother at this point?

A. Yes.

Q. He does have emotional ties?

A. I'm just reading. I believe so.

Q. And are those ties beneficial to this child, given evidence of the mother's continuing use and certainly manufacture up until February 20th, 2001 of methamphetamine?

A. Yes.

Q. Okay. Wait a minute, let me rephrase the question. I'm not sure—I may have lost you in that convoluted and compound question. Let me break it down a little bit. You believe that the child does have some emotional ties, is that correct?

A. Yes.

. . .

Q. What is it that you based your conclusion upon, that the emotional ties between the mother and the child are not beneficial to the child?

A. Based on the methamphetamine manufacture in the home. That's a substantial risk to his safety.

We do not agree with the mother's assertion that Young's remarks amount to testimony that K.C.M. had strong emotional ties to the mother. Young merely stated that there were emotional ties, without characterizing those ties as strong.

The mother also maintains that there was evidence of K.C.M.'s strong emotional ties to her in that she "visited the child whenever possible and that the child readily came to her." The evidence in the record on such interaction between the mother and K.C.M. during visitation periods is in a June 15, 2000, report prepared by Cindy Doman, a DFS social worker, who reported that "[K.C.M.] is happy to

see his natural mother but is reserved in showing affection. The mother initiates affection then [K.C.M.] will respond." This evidence is consistent with the juvenile court's conclusion that K.C.M. had emotional ties to the mother, but those ties were not strong.

■ The other evidence in the record concerning K.C.M.'s emotional ties to the mother include a September 22, 2000, letter from Carrie Ramlow, a counselor who met with K.C.M. "for counseling to help him cope with his current living situation, and the possible confusion he may have been experiencing due to having two sets of parents." In the letter, Ramlow observed:

> [The foster mother] reported that [K.C.M.] appears anxious prior to scheduled visits with his biological mother. [The foster mother] did however report she believed [K.C.M.] demonstrated an "affectionate" relationship with his biological mom. [The foster mother] indicated that [K.C.M.] calls her and her husband "mom and dad" and refers to his biological mom and dad by their first names. [The foster mother] also reported that [K.C.M.'s] behavior following a visit with his mom, (client's father is currently incarcerated), is more aggressive, and that it takes several days after the visit for [K.C.M.'s] behavior to return to normal.

Similarly, the DFS Social Summary prepared April 5, 2001, notes that the foster parents related that "[K.C.M.] often states to them 'Don't let them take me away.'" Conversely, a February 14, 2001, letter from Marcy Rapp, a children's service worker with DFS, relates that the mother and the father had told her that they felt that K.C.M. became upset when the end of visitation periods approached and that he would try to extend the visit. We are to defer to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence. *In re A.A.R.*, 39 S.W.3d 847, 850 (Mo.App.2001). In light of this principle and the evidence in the record, we cannot conclude that the trial court's finding that K.C.M. had emotional ties to the mother, but that those ties were not strong, was against the weight of the evidence.

■ The mother also challenges the juvenile court's finding under § 211.447.6(3), claiming that the court's finding that she "has not made any meaningful contribution or payment" for the cost of K.C.M. is against the weight of the evidence. She notes that the record indicates that she was required to pay $105 per month in child support to K.C.M. beginning on November 15, 1999, and although she was $759 in arrears in her payment of child support at the time of the termination hearing, she was also then paying $60.58 every two weeks in support of K.C.M. A judgment terminating parental rights must include findings on the statutory factors such that a reviewing court can be assured that the juvenile court properly considered those factors in deciding whether to terminate parental rights. *In re A.S.O.*, 52 S.W.3d at 66. Given the nature of the evidence in the record, the conclusory nature of the finding in factor § 211.447.6(3) means that we cannot be assured that the juvenile court properly considered this factor in deciding whether to terminate the mother's parental rights.

■ As to the juvenile court's finding with respect to § 211.447.6(4), that additional services were not likely to bring about a lasting parental adjustment, the mother claims that the finding has no basis in the record, arguing that:

> the only services provided to the mother by the Division were parenting classes which she completed, counseling which

had been ongoing, and visitation which was stopped. The Division caseworker, under the last agreement, was to visit the home twice a month and had not done that. The Division did not discuss parent aid services or the parents as teachers program.

The dispositive issue here is not whether the mother participated in the services made available by the DFS; the issue is that, as the guardian *ad litem* stated in his August 31, 2001, report and recommendation that the mother's parental rights be terminated, despite the services offered, which included parenting classes, drug rehabilitation, supervised visitation, and psychological services, the mother had still not made sufficient progress in resolving her association with methamphetamine. We therefore cannot conclude that there was insufficient evidence in the record to support the juvenile court's finding, pursuant to § 211.447.6(4), that additional services would not bring about a lasting parental adjustment enabling the return of K.C.M. to the mother within an ascertainable period of time.

▮▮▮ As to the juvenile court's finding with respect to § 211.447.6(5), in which the juvenile court merely stated that the mother "ha[s] not demonstrated a commitment to the child," the mother claims that the finding is conclusory and, therefore, insufficient. Given the nature of the evidence in the record that the mother provided financial support and a continuing relationship with K.C.M. through consistent visitation, and the hearing testimony of DFS caseworker Mandy Young, who testified that, based upon the record, it was her opinion that the mother had a commitment to K.C.M., the conclusory nature of the finding in factor § 211.447.6(5) means that we cannot be assured that the juvenile court properly considered this factor in deciding whether to terminate the moth-

er's parental rights. *In re A.S.O.,* 52 S.W.3d at 66.

In summary, because we find that the juvenile court's findings as to § 211.447.6(3) and (5) are deficient, and because the juvenile court did not make a finding with respect to § 211.447.6(2), we cannot be assured that the court properly considered the necessary factors in deciding whether the termination of the mother's parental rights under § 211.447.2(1) was in the best interests of K.C.M., and we are compelled to reverse the judgment terminating the mother's parental rights and remand the case for further proceedings in accordance with this opinion.

## The Father's Appeal

### III.

As noted, *supra,* the father makes the same claims as does the mother. Consequently, his claim in his first point is rejected on the same basis as we rejected the mother's claim in her Point I. Thus, we move directly to the father's second claim of error in which he claims that the juvenile court erred in terminating his parental rights to K.C.M. based upon its finding that termination was in the best interests of the child, as required by § 211.447.5, because the court failed to make the requisite best interests findings under § 211.447.6 and that its findings were not supported by the record. Specifically, he claims that the juvenile court's findings "were conclusory, against the weight of the evidence or not supported by substantial evidence, and the court failed to make all appropriate and applicable findings."

▮▮▮ In making its requisite best interests findings pursuant to § 211.447.6, the juvenile court made findings on factors (1), (3), (4), and (5), finding that:

That [K.C.M.] has no substantial emotional ties to the natural father, and that

the child's emotional ties with the natural mother, are not strong.

That the natural father, and the natural mother, although able to do so, have not made any meaningful contribution or payment for the cost of care and maintenance of the child.

That it is not likely that additional services would bring about a lasting parental adjustment enabling the return of [K.C.M.] to the natural father or the natural mother within an ascertainable period of time.

That the natural father and the natural mother have not demonstrated a commitment to the child.

In attacking the sufficiency of these best interests findings of the juvenile court, the father argues that:

[t]he conclusions of the trial court that the child has no substantial emotional ties to the natural father are not made clear in either the testimony or the social summaries reviewed by the court and it is simply not possible to conclude that it is not likely that additional services would bring about a lasting parental adjustment enabling the return of the child to the natural father within an ascertainable period of time.

The father fails to adequately develop his argument beyond conclusory statements that the juvenile court's findings as to § 211.447.6 are insufficient, and, thus, his point is considered abandoned. *In re T.E.*, 35 S.W.3d 497, 506 (Mo.App.2001).

Points denied.

## Conclusion

The judgment of the juvenile court terminating the father's parental rights to K.C.M. is affirmed. The judgment of the juvenile court terminating the mother's parental rights to K.C.M. is reversed and the case is remanded to the juvenile court to make sufficient findings on § 211.447.6, as supported by the record, and to enter judgment in accordance therewith.

ULRICH, P.J., and SPINDEN, J., concur.