**In the Interest of M.A., A.A., and S.E.A., Appellants.**

**Juvenile Officer, Plaintiff,**

**v.**

**I.A. (Mother), Respondent.**

**No. WD 65819.**

Missouri Court of Appeals, Western District.

March 3, 2006.

Laura Higgins Tyler, Kansas City, MO, for appellants.

Ellen Day Jervis, Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

This is an appeal of a judgment entered by the Circuit Court of Jackson County, Family Court Division, (juvenile court), denying a petition for termination of the parental rights of I.A. (Mother) to her children M.A., A.A., and S.A. The appeal is brought by the children's guardian ad litem (GAL).[1] On appeal, the GAL asserts various reasons why the juvenile court erred in failing to terminate I.A.'s parental rights. The GAL asks this court either to remand the case with instructions for the juvenile court to enter findings pursuant to section 211.447.5, RSMo 2000,[2] or, in the alternative, to enter a judgment of termination. Because the juvenile court failed to make sufficient findings regarding the statutory grounds pled by the juvenile officer in its petition for termination of I.A.'s parental rights, the juvenile court's decision is reversed and remanded to allow the juvenile court to make the necessary findings.

---

1. The GAL brings this appeal pursuant to section 211.462.3(1), RSMo 2000.

2. All statutory references are to the Revised Statutes of Missouri 2000.

### Factual and Procedural Background

On May 30, 2001, the Juvenile Officer of Jackson County filed a petition to have the juvenile court assume jurisdiction over S.A., born December 28, 1990; M.A., born November 17, 1994; and A.A., born January 11, 1999. The petition alleged that S.A. and M.A. were sexually abused by their father, I.A. failed to protect S.A. and M.A., the children's home was unfit for habitation, the children had head lice, and father physically abused S.A. by striking her on the arm with a back scratcher. On June 6, 2001, S.A., M.A., and A.A. came under the jurisdiction of the juvenile court and were placed in the temporary custody of the Division of Family Services ("DFS" or the "Division").

On November 26, 2001, the juvenile court sustained the allegation that father sexually abused S.A. The court, however, found that there was insufficient evidence to sustain the allegations that father sexually abused M.A., that I.A. failed to protect S.A. and M.A., and that the children had lice. There was no evidence offered on the condition of the home. Thereafter, on January 14, 2002, the court issued findings and recommendations, which committed the children to the custody of the Division for placement in foster care. In particular, the court found that "[r]eunification is not possible as the father continues to reside in the home." On November 17, 2002, however, father died.

On November 4, 2002, the juvenile officer filed a petition for termination of I.A.'s parental rights to S.A., M.A., and A.A. As grounds for termination, the petition alleged that S.A., M.A., and A.A. "had been in foster care for at least fifteen of the most recent twenty-two months," under section 211.447.2(1), the children had been abused or neglected, under section 211.447.4(2), and failure to rectify conditions that led to the assumption of jurisdiction over the children, under section 211.447.4(3). On July 30, 2003, following a two-day hearing, the juvenile court entered an order denying the juvenile officer's petition for termination of I.A.'s parental rights. In particular, the court found sufficient evidence to demonstrate that the children had been in foster care for at least fifteen of the most recent twenty-two months, but the evidence was insufficient to establish either of the other two grounds for termination alleged in the petition.[3] Finding one ground for termination of I.A.'s parental rights, the court then examined the best interest of the child factors, set forth in section 211.447.6. After analyzing each of these factors, the juvenile court found that the best interest of S.A., M.A., and A.A. required that I.A.'s parental rights be preserved and maintained. Consequently, the juvenile court denied the petition and ordered that custody of S.A., M.A., and A.A. be placed with I.A., under the supervision of the Division. The court further ordered that supervision was to be limited to "providing family therapy to assist in rebuilding the bond between [I.A.] and the children." Following the juvenile court's order, S.A., M.A., and A.A. were returned to I.A.'s custody.

In August 2003, when the children were returned to I.A.'s custody, I.A. and the children lived with I.A.'s sister and her husband. In September 2003, I.A. moved into her own house. When I.A. moved, the children were required to attend a new school. After moving into her own house, I.A. allowed Tina and Daniel Frayling to

---

3. Since the juvenile court's decision, the Missouri Supreme Court has held that section 211.447.2(1) is not a separate ground for termination of parental rights, "but rather solely ... a trigger for filing a termination petition." *In the Interest of M.D.R.,* 124 S.W.3d 469, 476 (Mo. banc 2004).

move in with her family for financial reasons. The Fraylings continued to live with I.A. and her children until December 2003. While the children were residing with I.A., I.A. received social security benefits derived from the death of the children's father.

On December 5, 2003, the juvenile officer filed a motion to modify. In the motion, the juvenile officer alleged that I.A. had educationally neglected S.A.; M.A. and S.A. had head lice;[4] I.A. allowed individuals with a history of child abuse, the Fraylings, to be in contact with her children; and I.A. had a chemical dependency. On December 11, 2003, the juvenile officer filed a first amended motion to modify, which contained the same allegations as the original motion except that the allegation that I.A. had a chemical dependency was excluded.

The court held a hearing on the first amended motion to modify on December 12, 2003. At the hearing, the parties informed the court that they had reached an agreement to allow the children to remain with I.A. In agreeing not to remove the children from I.A.'s custody and pursuant to the parties' agreement, the court ordered that individual counseling for I.A. and the children was to occur, family counseling was to continue; Intensive In-home Services were to be provided; I.A. was to submit to random urinalysis; the children were to attend school, unless a medical excuse was provided; and there was to be no contact with Dan or Tina Frayling or any other members of the Frayling family. The court also ordered that before anyone could live in the home with I.A. and her children, a background check must be performed and court approval obtained. The court also authorized services through the Metropolitan Organization to Counter Sex-

ual Assault (MOCSA) and the Pause Parenting class, a parenting skills course.

On December 19, 2003, the juvenile officer filed a second amended motion to modify, which included count I from the first amended motion to modify and added a second count. The second count alleged that on or about December 18 and 19, 2003, I.A. violated the court's prior order issued during the December 12, 2003 protective custody hearing, in that I.A. permitted contact between her children and Daniel and Tina Frayling. That same day, the court issued an order for protective custody placing the children in temporary and legal custody of the Division. On December 30, 2003, the court entered its order, following a protective custody hearing, wherein the court ordered that the children were to remain in protective custody and I.A. was to have supervised visitation. Following a case management conference on January 5, 2004, the court ordered the Division to provide the following services: individual therapy for I.A. and the children, family therapy, parent aide for visitation, MOCSA for I.A., and Pause Parenting Group for I.A. The court also ordered supervised visitation.

On March 12, 2004, the juvenile court sustained the December 19, 2003 second amended motion to modify. In particular, the juvenile court found that it was "gravely concerned" about I.A.'s inability to care for her children, noting that within two months of being returned to her custody, two of her children had severe head lice, one of which was so severe that it required the child's head to be shaved. In addition, the court found that I.A. allowed contact between the Fraylings and her children, after the court ordered that no contact was to occur. The court ordered that all prior services ordered should continue to be provided to I.A., with the exception of Inten-

---

4. The head lice were so severe that S.A.'s head had to be shaved.

sive In-home Services. The court also relieved the Division of the requirement that it provide I.A. with transportation, ordering I.A. to provide her own transportation to services. The court ordered that I.A. was to have supervised visitation, if recommended by the children's therapist. Finally, the court set the case for a permanency hearing.

On May 26, 2004, following the permanency hearing, the court ordered that the children were committed to the custody of the Division for placement in foster care. The court also ordered "permanency through termination of parental rights and adoption shall be pursued." Finally, the court ordered that all prior ordered services were to remain and I.A. was allowed to have supervised visitation.

On November 3, 2004, the juvenile officer filed a first amended petition for termination of I.A.'s parental rights. In the petition, the juvenile officer pleaded grounds for termination under subsections (2) and (3) of section 211.447.4 for abuse and neglect and failure to rectify. Prior to the hearing on the petition, I.A. filed a motion in limine to prohibit the introduction of evidence of I.A.'s activities and progress prior to July 30, 2003, the date of the juvenile court's first order denying the petition for termination of I.A.'s parental rights.

On June 28, 2005, prior to the commencement of the hearing on the petition to terminate I.A.'s parental rights, the court heard arguments on I.A.'s motion in limine. The court sustained the motion and the juvenile officer assured the court that he would rely on and adduce evidence of I.A.'s progress since July 30, 2003.[5] The court then proceeded to hear evidence on the first amended petition to terminate I.A.'s parental rights. At trial, testimony was heard from Peggy Chilson, individual therapist for I.A. and family therapist; Pam Guthrie, individual therapist for the children; Jennie Walters, Sure Program specialist for MOCSA; and Sheri Kuntz, a case worker from Catholic Charities, contracted by the Division to be the case manager for this case. On July 14, 2005, the juvenile court entered a judgment denying the petition to terminate I.A.'s parental rights. On July 25, 2005, the juvenile officer and the GAL filed a joint motion to amend the judgment, in part, arguing that the juvenile court erred in failing to make proper findings. The next day, the juvenile court denied the motion. Thereafter, the GAL filed this appeal.[6]

### Standard of Review

■■■ This court reviews a trial court's decision regarding termination of parental rights "based on the requirements of section 211.447.5 that 1) the trial court must find by clear, cogent, and convincing evidence that one or more grounds for termination exists under subsections 2, 3 or 4 of section 211.447 and 2) the trial court must find that termination is in the best interests of the children." *In the Interest of*

---

5. The GAL does not challenge the juvenile court's ruling on I.A.'s motion in limine. Therefore, this court expresses no opinion on the correctness of the juvenile court's ruling on this issue.

6. In *In the Interest of R.D.*, 778 S.W.2d 848, 851 (Mo.App. W.D.1989), this court held that a judgment denying a petition for termination of parental rights was not a final judgment and, therefore, not appealable. *See also In*

*the Interest of L.M.B.*, 45 S.W.3d 892 (Mo. App. W.D.2001) (same). In 2003, the Legislature abrogated this court's decisions in *In the Interest of R.D.* and *In the Interest of L.M.B.*, however, by enacting subsection 6 of section 211.477, which states: "The granting or denial of a petition for termination of parental rights shall be deemed a final judgment for purposes of appeal."

*P.L.O.*, 131 S.W.3d 782, 788 (Mo. banc 2004). Clear, cogent, and convincing evidence "'instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.'" *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984) (citation omitted). Whether statutory grounds for termination have been proven is reviewed under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *P.L.O.*, 131 S.W.3d at 788–89. Thus, this court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 789. In considering whether termination is in the best interest of the child, "the standard of proof at trial is a preponderance of the evidence, and the standard of review on appeal is abuse of discretion." *Id.* In reviewing each of the trial court's determinations, this court "is deferential to the fact-findings of the trial court and considers all the evidence and reasonable inferences from the evidence in the light most favorable to the judgment." *Id.*

### Failure to Make Proper Findings Requires Reversal

In her first point on appeal, the GAL asserts the juvenile court erred in failing to make findings regarding the grounds pled for termination of I.A.'s parental rights and in failing to make findings regarding the best interest of the children. In this case, the juvenile officer alleged grounds for termination of parental rights pursuant to subsections (2), abuse and neglect, and (3), failure to rectify, of section 211.447.4. In particular, the GAL contends the court did not make the required findings regarding subsection (2) regarding whether the children were abused and neglected. In addition, the GAL claims the court failed to make findings that the best interest of the children are served by the court's disposition as required by subsection (5) of section 211.447 and failed to make findings on the applicable factors of subsection (6) of section 211.447.

Under subsection (5) of section 211.447:

> The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.

Therefore, under section 211.447, termination of parental rights is a two-step process. *In the Interest of K.C.M.*, 85 S.W.3d 682, 690 (Mo.App. W.D.2002). In the first step, to terminate parental rights under 211.447, the juvenile court must find, by clear, cogent, and convincing evidence, at least one of the statutory grounds set forth in that section. *Id.* If the court finds that a statutory ground for termination has been proven, the court then proceeds to the second step. *Id.*

In the second step, to terminate parental rights, "the court must then find, pursuant to [section] 211.447.5, that the best interests of the child would be served by termination." *Id.* The court's analysis of the best interests of the child "must take into account any applicable 'best interest' factor[] listed in section 211.447.6." *In the Interest of E.C.H.J.*, 160 S.W.3d 815, 819 (Mo.App. W.D.2005). *See also K.C.M.*, 85 S.W.3d at 692 ("in determining in step 2 of the procedure whether to terminate on the ground found as being in the child's best interests, the court is to consider and make findings on the appropriate and ap-

plicable factors of [section] 211.447.6"). The court, however, "never reaches the issue of best interest, under [section] 211.447.5, unless and until a statutory ground for termination is proven." *K.C.M.*, 85 S.W.3d at 690. *See also In the Interest of M.D.R.*, 124 S.W.3d 469, 476 (Mo. banc 2004) ("*If* grounds for termination exist, the state must *then* determine whether termination is in the best interests of the child.") (Emphasis added).

In this case, the first ground for termination asserted by the juvenile officer in the petition for termination of I.A.'s parental rights was section 211.447.4(2), abuse and neglect.[7] The GAL claims the juvenile court failed to make a finding that the children were abused or neglected. The GAL argues that the evidence clearly demonstrated that the children were abused and neglected, as found by the juvenile court when the court (1) sustained the juvenile officer's allegation in the May 30, 2001 petition that S.A. was sexually abused by father, and (2) sustained the allegations in the December 19, 2003 Second Amended Motion to Modify finding that I.A. is unable and unwilling to provide for the needs of her children despite services provided by DFS, the children had head lice, and I.A. violated the court's order that the children were not to have any contact with the Fraylings, who had a history of child abuse.

■ Under subsection (2) of section 211.447.4, the juvenile officer may file a petition to terminate parental rights when it appears that "[t]he child has been abused or neglected." In determining whether to terminate parental rights under subsection (2) of section 211.447.4:

[T]he court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development[.]

Thus, in deciding whether to terminate parental rights when it is alleged that a child has been abused or neglected under subsection (2) of section 211.447.4, the court is required to consider and make findings on *each* subsection of section 211.447.4(2). "[S]trict and literal compliance with the statutory requirements for a

---

**7.** A second ground for termination was also asserted by the juvenile officer in the petition for termination of I.A.'s parental rights, i.e., subsection (3) of section 211.477.4, failure to rectify. The GAL, however, does not argue that the court failed to make proper findings regarding this ground.

termination of parental rights under [section] 211.447 is necessary." *In the Interest of M.G.,* 31 S.W.3d 487, 488 (Mo.App. W.D.2000). Moreover, "the trial court's findings must be specific enough for a reviewing court to be assured that the trial court properly considered the factor." *In the Interest of C.F.C.,* 156 S.W.3d 422, 427 (Mo.App. E.D.2005). Conclusory findings regarding any factor may be grounds for reversal. *Id. See also M.G.,* 31 S.W.3d at 489 (failure to make even minimal findings on factors requires reversal).

■ In this case, the juvenile court made specific findings regarding subsection (a) and (b) of section 211.447.4(2). In particular, the juvenile court's judgment included findings that no evidence was presented that I.A. suffers from a mental condition or has a chemical dependency. The juvenile court's judgment, however, failed to make a specific finding on subsection (c), regarding a "severe act or recurrent acts of physical, emotional or sexual abuse." While the GAL concedes that this factor is not applicable, the court is required to make specific findings on each factor, "and if a factor is not relevant then the court should state why it is not relevant." *Id.* at 490.

Regarding subsection (d) of section 211.447.4(2), the "[r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development," the juvenile court specifically found "[t]here was no evidence of any attempt on the part of the Division to obtain a specific child support order against [I.A.]." From this finding the juvenile court concluded that the allegation that I.A. failed to provide care and maintenance for her children had not been established.

Such a finding, however, is not an explicit finding with respect to this ground for termination. Such a conclusory finding, which makes no indication of either I.A.'s physical or financial ability to provide for the needs of her children, is insufficient for this court to determine whether the juvenile court properly considered this factor, particularly in light of the record before this court.

Regarding I.A.'s physical and financial ability to care for her children, the record before this court contains no evidence indicating that I.A. was unable to provide for the basic necessities of her children. In fact, the record contained evidence that I.A. did hold a job at some point in time. Specifically, sometime between August and November 2004, I.A. got a job at an Osco store. Her employment at Osco, however, apparently ended in January 2005. There is no indication in the record, however, as to why her employment ended or whether I.A. was physically unable to work. In addition, the record demonstrated that while the children were in her care, I.A. had an additional source of income, i.e., Social Security benefits derived from the children's father's death.

The record before this court shows that I.A.'s ability to keep her children in a safe environment and actual provision of the children's basic necessities was an issue that was contested at the hearing. For example, the evidence showed that even after the juvenile court told I.A. that she was not to allow her children to have any contact with the Fraylings, the Fraylings were discovered to be living with I.A. and her children. In fact, Ms. Guthrie testified that I.A. allowed unsupervised contact between her children and the Fraylings. Moreover, Ms. Guthrie testified that while the children were in I.A.'s custody, they "were disheveled," their clothes were dirty, they would frequently be found

wearing the same clothes, and they had to sleep in their clothes. And even though it was cold outside and at times snow was on the ground while the children were in I.A.'s custody, Ms. Guthrie testified that A.A.'s shoes were "falling off of her" and she didn't have proper covering for her feet. Ms. Guthrie also indicated that A.A. was upset because she had to wear the same underwear as the Fraylings' daughter.

In addition, Ms. Guthrie testified that when the children were initially returned to I.A.'s custody, the children bathed regularly but, as time went on, they did not. She further testified that the children were dirty and their hair was not clean. When the children first were returned to I.A.'s custody, I.A. did not provide beds for the children to sleep in. And even though I.A. did eventually obtain beds for her children, she did not provide linens. Consequently, the children got head lice. The head lice were so severe in S.A.'s case that her head had to be completely shaved. Ms. Guthrie also testified that S.A.'s self-esteem was negatively affected while in I.A.'s custody due to her appearance, which was caused by I.A.'s failure to provide shampoo and cleanser for S.A.'s face. In addition, Ms. Guthrie testified that there was decaying food in the house, which attracted flies. She further testified that M.A. told her that he was concerned about the number of roaches in the house and he would take bologna from the center of the stack because he knew that roaches hadn't crawled on that food.

Ms. Guthrie also testified that I.A. kept a rooster in a cage at the house where her children were living. She indicated that the children would frequently take the rooster out of the cage and place it in a large metal tub full of filthy water that the children and the rooster would swim in at the same time. In addition, Ms. Guthrie testified that while living with I.A., S.A. experienced difficulty in regularly attending school. Ms. Guthrie stated that during the time the children were in I.A.'s custody, on about five occasions, S.A. was not in attendance at school. Ms. Guthrie described that on one occasion, S.A. hid in I.A.'s bedroom because she was unhappy at school and did not want to go. In addition, Ms. Chilson testified of an incident where A.A. reported that M.A. had inappropriately touched her and I.A. failed to properly supervise her children. Finally, Ms. Guthrie testified that when the children were removed from I.A.'s custody, they were relieved to be returned to clean housing and once again living under conditions where they were able to be clean. Ms. Guthrie testified that all three children, who were thriving in the same foster home that they had been in since first coming into DFS custody in June 2001, indicated that they did not want to return to I.A.

In sum, the lack of findings, despite evidence in the record, if believed to be true, from which it could be inferred that I.A. was physically or financially able to provide for the basic necessities of her children and evidence of I.A.'s significant neglect of the children while they were in her custody, suggests to this court that the juvenile court may not have considered this factor when determining that the juvenile officer failed to establish a ground for termination based on abuse and neglect. In the absence of proper findings on this factor, this court is simply unable to determine whether the juvenile court did in fact properly consider this factor. While the evidence may have been insufficient to find grounds for termination of I.A.'s parental rights based on a failure to rectify due to the Division's failure to provide I.A. with

sufficient services,[8] the juvenile court's findings are insufficient to determine whether it properly considered the alternative basis pled by the juvenile officer for termination, i.e., abuse and neglect. While the trial court did make findings on subsections (a) and (b) of section 211.447.4(2), its failure to make sufficient findings on subsections (c) and (d) leaves this court unable to determine whether the juvenile court properly considered these factors. The trial court is required to make findings on each factor because proof of any one factor is sufficient to terminate parental rights. *C.F.C.*, 156 S.W.3d at 427. Accordingly, the juvenile court's decision is reversed and remanded to allow the court to make all the factual findings required by section 211.447.4(2).[9] *M.G.*, 31 S.W.3d at 489. In addition, should the juvenile court find on remand sufficient grounds for termination of I.A.'s parental rights under subsection (c) or (d) of section 211.447.4(2), it must then proceed to make findings on whether termination is in the best interests of the children. Section 211.447.6.

The juvenile court's decision is reversed and remanded to allow the juvenile court to make the proper findings consistent with section 211.447.

All concur.

---

8. This court, however, expresses no opinion on whether the juvenile court erred in finding that the juvenile officer failed to prove grounds for termination based on failure to rectify.

9. Because the granting of this point is dispositive, the GAL's remaining points on appeal need not be discussed.