52 S.W.3d 44 (2001)
In the Interest of T.F.S., K.L.W., and P.R.W., minors.
T.F.W., Appellant,
v.
Greene County Juvenile Office, Respondent.
Nos. 23652, 23683, 23684.
Missouri Court of Appeals, Southern District, Division Two.
June 28, 2001.
Motion for Rehearing or Transfer Denied July 20, 2001.
Application for Transfer Denied August 21, 2001.
*45 John E. Kelly, Springfield, Attorney for Appellant.
Bill Prince, Springfield, Attorney for Respondent.
GARRISON, Judge.
T.F.W. ("Mother") appeals a judgment terminating her parental rights with respect to her three minor children, K.L.W., born on December 16, 1991, T.F.S., born on November 12, 1994, and P.R.W., born on April 16, 1997. Mother has filed separate appeals, which have been consolidated. We affirm.
K.L.W., T.F.S., and P.R.W. (collectively referred to as "the children") were taken into protective custody following Mother's arrest for drug distribution. On December 10, 1998, petitions to terminate Mother's parental rights were filed by the Greene County Juvenile Office. The petitions first alleged that the children had been abused and neglected, and that they had been adjudicated to have been abused and neglected. As part of that ground, it was alleged that Mother suffered from a chemical dependency, which prevented her from consistently providing the necessary care, custody and control of the children and which could not be treated so as to enable Mother to consistently provide such care, custody and control. It was also alleged that Mother repeatedly and continuously failed, although physically and financially able, to provide the children with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the children's mental or emotional health and development. The petitions further alleged that the children had been under the jurisdiction of the court for a period of one year and the conditions that led to the assumption of jurisdiction continued to exist.
A hearing on the petitions to terminate parental rights was held on April 7, 2000. All three petitions were consolidated for purposes of the hearing. The trial court took judicial notice of the underlying neglect case against Mother in which it had been determined that the children had been neglected and abused.
At the hearing, the Greene County Juvenile Office presented a number of witnesses in support of its petitions to terminate parental rights. Sharon Carr ("Carr"), an investigative worker from Division of Family Services ("DFS"), testified that she first came into contact with Mother on September 1996 during her investigation of a hotline report alleging that Mother had left two of the children with *46 inappropriate caretakers. Carr stated that Mother, while pregnant with P.R.W., left the two children and went to St. Louis where she was arrested for drunk and disorderly conduct. Carr testified that she later met with Mother in Mother's home, which she found to be small and crowded, but that Mother indicated the living arrangement was only temporary. Carr stated that she did not remove the children from the home at that time, but recommended that services be provided to the family.
Barbara McCarty ("McCarty"), a DFS worker, also testified that she worked with Mother and the children from October 1996 through April 1997 and from September 1997 through March 1998. She testified that throughout her first involvement with the family, Mother was in denial about her substance abuse. McCarty stated that Mother was also offered parenting classes, counseling, and other services, but that Mother did not attend.
McCarty testified that she became involved with the family again in September 1997, following the removal of the children from the home after another hotline investigation involving Mother. The investigation involved two allegations, the first that Mother had left the children with a drug user while she purchased drugs, and the second involving the failure of Mother to get K.L.W. to school. During that investigation, T.F.S. and P.R.W. were found unclothed and their mattresses were soaked in urine.
McCarty testified that during the second period of her involvement with the family, she prepared a treatment plan for Mother and referred her to an inpatient substance abuse treatment program. McCarty noted that Mother completed inpatient treatment, but did not complete her outpatient program and resumed drug use. Mother admitted to her continued use of crack and methamphetamine. McCarty also testified that part of Mother's treatment plan required her to maintain a stable, appropriate home. McCarty testified that Mother had an apartment, but it was not deemed stable as individuals were continuously coming and going from the premises. McCarty stated that Mother was referred to parenting classes, but did not attend, and that she failed to provide verification of stable employment.
Amy Clotfelter ("Clotfelter"), a DFS worker who worked with the family from March 1998 through the date of the termination hearing, testified that Mother did not provide verification of assessments from treatment centers and that she did not follow through with referrals for counseling. She stated that Mother did not refrain from using drugs, and that two of Mother's random drug tests revealed that Mother continued to use controlled substances. She testified that Mother maintained an apartment until she was incarcerated for probation violations, but that Mother did not consistently keep DFS informed as to her whereabouts. Clotfelter also noted that Mother did not maintain consistent visitation with the children, and failed to provide verification of stable employment or steady income.
Jill Coloney ("Coloney"), a community support worker at Bridgeway, a substance abuse treatment center, testified that Mother, in addition to substance abuse issues, had mental health issues that needed to be addressed. Coloney testified that Mother did not complete the treatment goals formulated for her and would sleep during sessions. She stated that the sessions were ended due to Mother's lack of participation.
Two of Mother's probation officers, Bridget Bright ("Bright") and James Freeman ("Freeman"), also testified. Bright, who began working with Mother when she *47 was placed on probation in April 1998, stated that Mother did not successfully comply with the conditions of probation. Mother was the subject of a violation report in September 1998, at which time Mother acknowledged the use of marijuana and methamphetamine. Bright required Mother to attend inpatient treatment, but Mother failed to do so. Bright then referred Mother to Freeman, the intensive probation officer. Freeman supervised Mother from September 1998 until her probation was revoked in July 1999. Freeman testified that in October 1998, Mother admitted to the use of controlled substances, including cocaine. He stated that due to Mother's failure to comply with the treatment plans, her probation was revoked.
At the hearing, Dr. Robert Gladden ("Dr. Gladden"), a counselor who worked with K.L.W. and T.F.S., also testified. He indicated that both children were extremely disturbed. He noted that K.L.W. was a "parentified child" as she assumed the role of the surrogate parent, and he spent time helping her adjust to being a child. K.L.W. indicated to him that Mother slept a lot, and that she saw Mother use drugs in the home. K.L.W. was also worried that certain men that Mother invited into the home posed a threat to the children and Mother. Dr. Gladden indicated that T.F.S. had panic and severe separation anxiety disorders. T.F.S. also recounted various episodes of men in Mother's home sexually touching her. Dr. Gladden recommended that all of the children remain in a stable, secure home environment, and noted that they had a long way to go to undo the damage done to them.
At the hearing, Mother testified that she had been incarcerated and served time for distribution of a controlled substance, and that she was currently serving time on probation violations. She testified that her earliest release date would be July 2000 and the latest would be July 2003, and that upon her release, she would go to a halfway house for six to twelve months. Mother testified that she had substance abuse problems for twenty to twenty-five years. Mother stated that she had been drug free for fourteen months, but indicated that she had been incarcerated during much of that time and that she had trouble abstaining from controlled substances when not incarcerated. Mother admitted that she had not complied with her treatment plans.
On April 7, 2000, the trial court terminated Mother's parental rights to all three children. In its findings, the trial court based Mother's termination on two grounds: Section 211.447.4(2),[1] neglect; and Section 211.447.4(3), failure to rectify. The trial court held that the best interests of the children would be served through the termination of Mother's parental rights. Mother appeals.
This court will affirm an order terminating parental rights unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. In re A.A.R., 39 S.W.3d 847, 850 (Mo.App. W.D.2001); Matter of M.M., 973 S.W.2d 165, 168 (Mo.App. S.D.1998). This standard of review is consistent with the "clear, cogent and convincing" standard of proof required by Section 211.447 in termination cases. In Interest of T_ M. E_, 874 S.W.2d 552, 559 (Mo.App. S.D.1994). In reviewing the sufficiency of the evidence supporting an order, this court considers the evidence and all reasonable inferences in the light most favorable to the order. In Interest of M.N.M., 906 S.W.2d 876, 878 (Mo.App. *48 S.D.1995). Further, due regard is given to the trial court's opportunity to judge the credibility of witnesses. In Interest of M.H., 859 S.W.2d 888, 892 (Mo.App. S.D.1993).
Mother raises one point on appeal. In it, she contends that the trial court erred in terminating her parental rights because its determination that she failed to rectify the conditions that led to the children's removal and that there was little or no likelihood that those conditions would be remedied at an early date was against the weight of the evidence. Mother contends that at the time of trial, she did not have a chemical dependency that prevented her from providing for her children, but instead, was "succeeding in dealing with such dependency as well as recognizing her underlying mental illness."
Mother's claim of error appears to be directed to only one of the grounds for termination found by the trial court, Section 211.447.4(3), often referred to as the "failure to rectify." See In Interest of R_L_K_, 957 S.W.2d 778, 782 (Mo.App. S.D.1997). Neither Mother's point relied on nor the argument following it appears to challenge the sufficiency of the evidence to support the other ground found by the trial court for the termination of Mother's parental rights, Section 211.447.4(2), neglect. Under Section 211.447.5, a trial court may terminate parental rights if it finds termination is in the children's best interests and when it appears by clear, cogent and convincing evidence that one or more statutory grounds for termination exists. See M.N.M., 906 S.W.2d at 879. The existence of even one statutory ground for termination is sufficient if termination is in the children's best interests. In re S.L.J., 3 S.W.3d 902, 907 (Mo.App. S.D.1999). Consequently, even were Mother's attack on the "failure to rectify" ground meritorious, it would not compel reversal. Furthermore, as henceforth explained, Mother's attack on that ground is without merit.
Under Section 211.447.4(3), the trial court found that the children had been under the jurisdiction of the trial court for a period of one year, and the conditions that led to the assumption of jurisdiction by the trial court still existed, including Mother's unstable lifestyle, her inability to appropriately parent the children, and her chemical dependency. It found that there was little or no likelihood that those conditions would be remedied at an early date so that the children could be returned to Mother in the near future.
Based on the record presented, we find that there was clear, cogent and convincing evidence presented from which the trial court could have found that Mother failed to rectify the conditions that led to the children's removal and that there was little likelihood that Mother would rectify those conditions at an early date so that the children could be returned to Mother in the near future. The evidence showed that Mother continued to abuse drugs following the children's removal from the home and did not follow through with substance abuse treatment programs. While she did complete an inpatient program, she did not follow through with outpatient treatment and resumed use of crack cocaine and methamphetamine thereafter. Mother tested positive for methamphetamine on two out of three random drug tests administered to her. At the hearing, Mother testified that she had not used drugs for fourteen months, but acknowledged that she had been incarcerated during much of that time, and stated that she had difficulty staying drug free when not incarcerated. Mother also admitted to violations of the law as a result of her continued drug use, and was incarcerated at the time of the hearing as a result of probation *49 violations. She testified that her earliest release date would be July 2000 and the latest would be July 2003, and that upon her release, she would go to a halfway house for six to twelve months. In addition, the evidence showed that Mother did not provide DFS with verification of employment or other lawful means of support, did not keep DFS informed as to her household composition, and continued to associate with persons of negative influence. Mother failed to maintain constant visitation with the children, and did not follow through with recommendations for counseling or parenting classes. Mother's point is, therefore, denied.
The judgment of the trial court terminating the parental rights of Mother to K.L.W., T.F.S., and P.R.W. is affirmed.
PREWITT, J., and BARNEY, C.J., concur.
NOTES
[1] All statutory references are to RSMo 2000, unless otherwise indicated.