Gary D. Witt, Judge
M.J. ("Mother") appeals from the judgment of the Circuit Court of Jackson County terminating her parental rights to minor children, MaJ, MoJ, MeJ. (collectively "Children"), finding that: pursuant to section 211.447.5(2)[1] , Mother has neglected the Children; pursuant to section 211.447.5(3), Mother has failed to rectify the harmful conditions that prevent the Children's proper care; and pursuant to section 211.447.5(6), Mother is unfit to be a party to the parent and child relationship. Mother argues that the court erred in terminating her parental rights because there was insufficient evidence presented at trial to show a causal relation between Mother's disabilities and actual harm to the Children, as required under section 211.447.10. We affirm.[2]
Statement of Facts[3]
MaJ and MoJ are twins and were born September 15, 2011. In 2012, they *84 were placed in the care of the Jackson County Children's Division ("Children's Division"), after the court granted a petition filed by the Jackson County Juvenile Office ("Juvenile Office") alleging parental abuse and neglect. In 2013, MaJ and MoJ were briefly placed back with Mother under the continued supervision of the Children's Division. MeJ was born on December 12, 2013. In 2014, all three of the Children were in Children's Division custody. MaJ and MoJ were returned to Children's Division's custody due to Mother's failure to complete ordered services, and MeJ was placed in the Children's Division's custody due to neglect and abuse. The Children have remained in the Children's Division's custody since 2014 and Mother has been allowed predominately only supervised visitation. While the Children were in the custody of the Children's Division, the court made multiple findings during Permanency Hearings regarding Mother's failure to rectify the conditions for which the Children were placed in the Children's Division's custody, including Mother's inappropriate behavior and lack of proof of medication compliance.[4]
On April 22, 2016, the Juvenile Office filed a Petition for Termination of Parental Rights, and a trial was held on February 7, 2017. During the trial, evidence was presented regarding Mother's mental disabilities and resulting behaviors. Mother has been diagnosed with psychotic disorder, impulse control disorder, schizoaffective disorder, cannabis disorder, and bipolar disorder with psychotic features. Mother has an IQ of 74 and reads at a fourth grade level. Dr. Sisk, who performed a psychological evaluation on Mother in 2012, assessed that Mother's inability to care for the Children is likely a result of her bipolar disorder. Mother originally received her diagnosis of bipolar disorder at the age of 17 and was hospitalized for issues connected with that disorder as recently as June 2014. Mother's mental disabilities result in dysregulation in her moods, anger, paranoia, and aggressive reactions. Ky Clement ("Clement"), the Children's case manager from May 2014 to October 2014, testified Mother's demeanor was irrational, combative, and argumentative, and Mother had threatened her with physical violence. She also testified to a phone call with Mother in which Mother was irrational, delusional, and wavering whether she wanted the Children returned to her custody or not. Bridgette Crutchfield ("Crutchfield"), the Children's current case manager, testified that Mother's behavior switched between calm and manic. Crutchfield also testified that since October 2014, Mother has had three different therapists and six different parent aides due in part to Mother's combative behavior.
Testimony was provided at trial regarding Mother's failure to comply with signed service agreements. Mother had signed service agreements in November 2014 and April 2015, which included the combined goals of: (1) complete individual therapy; (2) remain medication compliant 100% of the time; (3) do not self-medicate by using illegal drugs; (4) demonstrate good parenting; (5) complete court ordered services 75% of the time within the next three months; (6) be able to meet all three of the Children's needs and keep them safe 100% of the time; (7) be able to keep a routine and stable parenting plan for all three *85 Children 100% of the time. Bridgette Banks ("Banks"), Mother's therapist from October 2014 to February 2015, testified that Mother would become combative at every therapy session, which on multiple occasions caused therapy sessions to end prematurely. She also testified that Mother missed approximately four or five sessions of individual therapy and failed to significantly progress in addressing her mental health issues. Mother ceased attending therapy seasons completely in February 2015. Mother was not medication compliant.
Diana Vega ("Vega"), a parent aide who worked with Mother in 2013 and again from 2015 to 2016, testified Mother did not progress in developing her parenting skills. Vega never recommended Mother have unsupervised contact with the Children because she was concerned that Mother would be physically violent towards the Children if left unsupervised. Vega terminated her work with Mother in 2016 due to a violent threat from Mother. Joyce Crawford ("Crawford"), a parent aide who worked with Mother from 2014 to 2015, testified that she also did not feel as though Mother had made parenting progress. Crawford terminated her work with this family due to being verbally threatened by Mother. Further, Mother never provided documentation to demonstrate that she was medication compliant and her behavior was inconsistent with medication compliance.
Testimony was also provided regarding Mother's relationship with the Children and the care she provided. Vega testified that Mother constantly favored MaJ and on one occasion forgot MeJ in a store. Due to the lack of attention MeJ received during visits when all of the Children were present, the Children's visitations were split so MeJ received individual visits. Mother would frequently talk to herself and when the Children would interrupt her she would yell at them. Clement testified that the Children did not want to participate in the visits with Mother and were not close to or bonded with Mother. After returning from the unsupervised visits that were allowed, MaJ and MoJ would rub themselves and demonstrate behaviors that resembled the act of masturbation. Mother was also ordered to pay $247.00 monthly as support for the Children, which she failed to do, and has accumulated a significant arrearage. Mother has failed to maintain stable employment over a significant period of time.
On April 3, 2017, the trial court issued its judgment terminating Mother's parental rights over the Children, finding that: pursuant to section 211.447.5(2), Mother has neglected the Children; pursuant to section 211.447.5(3), Mother has failed to rectify the harmful conditions that prevent the Children's proper care; and pursuant to section 211.447.5(6), Mother is unfit to be a party to the parent and child relationship. This appeal followed.
Standard of Review
Our review of this decision is in accordance with Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. In re Adoption of C.M.B.R. , 332 S.W.3d 793, 816 (Mo. banc 2011) (citation omitted). The judgment will be reversed only if this court is left with a firm belief that the order is wrong. Id. Evidence is reviewed in the light most favorable to the trial court's decision, and this court defers to the trial court's credibility determinations. Id. The same standard of review applies in all types of court-tried case regardless *86 of the burden of proof at trial. Ivie v. Smith , 439 S.W.3d 189, 199 (Mo. banc 2014).
In the Interest of G.E.R. v. B.R. , 441 S.W.3d 190, 195 (Mo. App. W.D. 2014).
Analysis
Mother argues in her sole point on appeal that the trial court erred in terminating her parental rights because there was insufficient evidence presented at trial showing a causal relation between Mother's mental health disabilities and harm to the Children, as required under section 211.447.10. Mother argues that the court must make specific findings regarding the nexus between Mother's mental disabilities and harm to the Children, citing In re L.J.D. , 352 S.W.3d 658 (Mo. App. E.D. 2011). Mother argues that language in both section 211.447.5(2)(a) and section 211.447.5(3)(c) requires a showing that the mental disability makes the parent incapable of providing child care and that the evidence presented at trial was insufficient to demonstrate that conclusion.
Mother exhibited violent and threatening behavior to parent aides, at times in front of the Children. Clement, Vega, and Crawford all ceased working with Mother after experiencing violent threats. Mother had outbursts of anger, which resulted in yelling at the Children in the presence of parent aides. Vega testified that she was so concerned with Mother's violent behavior that she never recommended unsupervised visits. Mother is also not medication compliant, which would assist her in controlling her violent outbursts. While it is unclear whether Mother's inability to become medication compliant was a result of her mental health issues or an unwillingness to do so, her inability or unwillingness to become medication compliant put the Children in danger. A factfinder could reasonably find Mother's inability to control her temper and emotions places the Children in danger without the supervision of parent aides. Under Mother's argument a court would have to wait until the Children were actually harmed before the Children could be protected. We need not subject the Children to a dangerous situation and wait for them to be harmed before steps are taken to protect them. There was sufficient evidence from which a factfinder could reasonably find a nexus between Mother's mental disabilities and harm to the Children.
Further, Mother seems to ignore the fact that her mental disabilities are not the sole basis upon which the trial court terminated her parental rights. Section 211.447.5(3) allows the court to terminate parental rights when:
The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.
In determining whether to terminate parental rights under this subdivision, the court is required to consider and make findings on the following facts: compliance with the terms of a social service program entered into with the Children's Division; the success or failure of the efforts of the Juvenile Officer, Children's Division, or other agency to aid the parent on a continuing basis in adjusting his or her circumstances or conduct to provide a proper home for the child; a mental condition rendering the parent unable to knowingly *87 provide the child the necessary care, custody and control; and a chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control. Section 211.447.5(3)(a)-(d). In making a finding under section 211.447.5(3), the trial court must consider the four factors outlined above. In re B.J.H., Jr. , 356 S.W.3d at 832. "Proof by clear and convincing evidence of one of the four factors is sufficient to support termination of parental rights." Id. at 831.
On appeal Mother does not challenge that the Children have been in Children's Division's custody for well over one year. Mother does not challenge the court's findings that, pursuant to section 211.447.5(3)(a), Mother failed to make progress in complying with the terms of her service agreements, and pursuant to section 211.447.5(3)(b), Mother continued to fail to remedy the conditions which brought the Children into the Children's Division's custody. These findings alone are sufficient for termination of parental rights under section 211.447.5(3), without addressing her mental disabilities under section 211.447.5(3)(c).
To the extent Mother relies on In re L.J.D. to draw a parallel with her own case, the court in that case only addresses section 211.447.5(3)(c) and no other factors present in section 211.447.5(3). 352 S.W.3d at 662-76. "[T]he 'existence of even one statutory ground for termination is sufficient if termination is in the children's best interest.' " In re B.J.K. , 197 S.W.3d 237, 246 (Mo. App. W.D. 2006) (quoting In the Interest of T.F.S. , 52 S.W.3d 44, 48 (Mo. App. S.D. 2001) ). Therefore, since Mother left unchallenged the other findings of the trial court under section 211.447.5(3), which alone are sufficient for termination of parental rights, Mother's point on appeal is denied.
Conclusion
The trial court's judgment is affirmed.
All concur

All statutory references are to RSMo 2000 (supplemented through January 1, 2017), unless otherwise noted.

The Children's fathers do not appeal the termination of their respective parental rights and therefore we do not address the facts supporting the termination of their parental rights.

We review the facts in the light most favorable to the trial court's judgment. In re B.J.H., Jr. , 356 S.W.3d 816, 820 n. 1 (Mo. App. W.D. 2012) (citation omitted).

In December 2015, the court found Mother continued to express anger and unreceptiveness towards service providers, exhibited mood dysregulation and paranoid behavior, and demonstrated no signs of medication compliance. In April and May of 2016, the court made similar findings regarding Mother's behavior and lack of proof of medication compliance.